John Powers, Respondent, *v.* The City of Yonkers, Impleaded, etc., Appellant.

Defendant V. entered into a contract with the city of Y. for improving one of its streets; the contract made it the duty of the city engineer to report to the common council in case the contractor should refuse or neglect to supply a sufficiency of skilled workmen or proper materials, or should fail in any respect to prosecute the work with promptness and diligence, or omit to fulfill any provision of the contract, and the common council were authorized, if satisfied of the correctness of such a report, to declare the contract forfeited, to employ other persons to finish the work "according to the plans and specifications," and to deduct the expenses from any sum due the contractor. While the contractor was engaged in performance the engineer reported that the time for the completion of the contract had "long since expired" and that the contractor had neglected to perform it in other respects. Pursuant to resolution of the common council notice was given the contractor that unless the work was prosecuted with diligence and promptness the city would consider the contract violated and forfeited, and that other persons would be employed to finish the work and the expense charged against the contractor; and, thereafter, that body adopted a resolution that the contract was broken and forfeited and the work was completed by the city. Some of the work done by the contractor, which was imperfect, was taken down and rebuilt. No notice had been given by the city to the contractor to take down and rebuild or otherwise change any of the work he had done. In an action to foreclose a mechanic's lien upon the moneys unpaid the city claimed to set-off the amount expended in completing the contract. The trial court excluded evidence of the cost of taking down and rebuilding the imperfect work, holding that the city having declared the contract forfeited on one ground could not thereafter allege other grounds, and that it was not authorized to take down and rebuild any work until the engineer had made a report that the contractor had neglected or refused to take down and properly replace such work. *Held,* error; that the forfeiture contemplated by the contract applied only to the contractor; and that upon forfeiture the city had the right to go on and complete the contract, not simply remedying the defects pointed out in the report, but in all other respects wherein the work was not completed according to the terms of the contract; that it was not requisite to specify in the resolution all the grounds of forfeiture, but it was sufficient to specify one tenable ground.

Several other lienors who were made defendants, and the amount of whose respective liens was less than $500, claimed that as against them no appeal to this court could be taken from the judgment. *Held,* that the

"amount in controversy," within the meaning of the provision of the Code of Civil Procedure limiting appeals to this court (§ 191, sub. 3), was the amount due the contractor; and, as this exceeded $500, that the judgment was appealable.

(Argued March 29, 1889; decided April 16, 1889.)

APPEAL by the defendant, the city of Yonkers, from a judgment of the General Term of the Supreme Court in the second judicial department, entered upon an order made May 10, 1887, which affirmed a judgment in favor of plaintiff entered upon decision of the court on trial at Special Term.

On the 18th of August, 1883, the defendant George B. Valentine entered into a contract with the city of Yonkers, a municipal corporation, for grading, curbing and otherwise improving Walnut street in that city, according to certain plans and specifications. Said Valentine agreed to finish the work within one hundred days from August 28, 1883, and upon its completion the city agreed to pay him the sum of $10,550, less ten per cent thereof, which was not payable until six months after the work was finished and duly accepted. It was provided, however, that the Common Council might, at its option, cause payments to be made, as the work progressed, to an amount not exceeding eighty per cent of "the full value of the work done," but that the exercise of such option should not be deemed to be inconsistent with any of the terms of the instrument," or "in any manner change their force and effect."

It was further provided that it should be the duty of the city engineer to report to the Common Council whenever the contractor should refuse, or neglect to supply a sufficiency of workmen of proper skill, and materials of proper quality, or should fail in any respect to prosecute the work with faithfulness, promptness and diligence, or should omit to fulfill any provision of the contract; that if the Common Council should be satisfied that such report was correct, it should have power to declare the contract "to be voided and forfeited, broken and violated" by the contractor, and the right to employ other persons to finish the work according to the plans and specifications; to charge the expenses thereof to him and to deduct the

amount out of any moneys otherwise payable to him.   Valentine commenced to perform the contract about August 24, 1883, but before the limit of one hundred days had expired he was directed by the city engineer who, according to the contract, had charge of the work for the city, to suspend until certain obstacles, for which the contractor was not responsible, had been removed.

On the 14th of September, 1885, while the contractor was engaged in performing his part of the agreement, the engineer in charge reported to the common council that the time provided for the completion of the contract had long since expired, and that the contractor had neglected to perform it in certain respects.   Upon the same day the common council, by resolution, directed that notice be given to the contractor and his sureties that unless they should resume the work required by the contract and prosecute the same with diligence and promptness, the city, pursuant to the provisions of the contract, would consider it " violated, broken, voided and forfeited," and would employ other persons to finish the work required by the contract, and that the expense thereof would be charged against the contractor and deducted from the contract-price.   Notice was given to the contractor accordingly, and on the 28th day of September, 1885, the common council adopted a resolution which, after reciting certain facts, declared that said contract was broken, violated and forfeited by the contractor, and directed the committee on streets to procure the necessary materials and the street commissioner to furnish the labor required by the contract so as to fully execute and perform the same in every respect, and that they should keep an accurate account thereof and report the same to the common council so that it might be charged against the contractor.   Thereupon the work was completed by the city and some of the work done by the contractor was taken down and rebuilt.   No notice was given to him by the city to take down or rebuild or otherwise change any of the work that he had done.

While the contractor was engaged upon the contract he was

paid by the common council, upon various certificates of the engineer, the sum of $8,186 in all, but, according to one of the stipulations, no certificate given or payment made under the contract was to be held to be an admission by the city that any part of the contract had been complied with, or that any detail of the work had been properly performed, in case the fact should be otherwise.

The plaintiff and some of the defendants, as sub-contractors under Valentine, or as laborers and material men, acquired liens upon the moneys due and to grow due from the city under said contract, pursuant to chapter 315 of the Laws of 1878. This action was brought by the plaintiff to foreclose his lien, and all of the other lienors were made parties as required by section 7 of said act.

The city, by its answer, after setting forth the facts, alleged that it expended in the completion of the contract the sum of $1,828.40, and that the balance due the contractor, after deducting this sum, was $215.60, which it was willing to pay into court.

The trial court held that the city, after declaring the contract forfeited upon one ground, could not afterwards be permitted to allege other grounds, and that it was not authorized to take down any work of the contractor and do it over at his expense until the engineer had made a report that the contractor had neglected or refused to take down such work and properly replace it. A decree, based upon appropriate findings, was entered adjudging that there was due from the city to the contractor the sum of $2,454.94, and directing that it be distributed among the different lienors according to amount and priority, and that the remainper should be paid over to him.

Further facts are stated in the opinion.

*Joseph F. Daly* for appellant. This is the fund and only out of the fund provided by the contract can these liens here sought to be foreclosed be paid. (Laws of 1878, chap. 315, § 5.) In this action no recovery can be had unless it appears

that there is money in the city treasury that was received from
assessment or the sale of assessment bonds. (*Richardson* v.
*City of Brooklyn*, 34 Barb. 569; *Hunt* v. *City of Utica*,
18 N. Y. 442, 445; *Baldwin* v. *City of Oswego*, 1 Abb. Ct.
of App. 62; *Baker* v. *City of Utica*, 19 N. Y. 326, 327;
*Tone* v. *Mayor, etc.*, 70 id. 157; *Swift* v. *Mayor, etc.*, 83 id.
528; Laws 1878, chap. 315, § 8.) If the city officers have
been negligent, they can sue the city for that negligence, and
in case they do this they can recover. But their action is in
tort, not on contract. (*Reilly* v. *City of Albany*, 21 N. Y.
State Rep. 460.)

*Ralph E. Prime* for respondent. The way in which any
breach may be ascertained and determined provided by the
agreement, is the only way, and that way must be used, and
all other ways are excluded, and the maxim "*expressio unius
est expressio alterius*" applies. (*Morey* v. *F. L. & T. Co.*,
14 N. Y. 306; *Curtiss* v. *Leavitt*, 15 id. 259; *Still* v. *Coming*,
Id. 300; *People* v. *Draper*, Id. 568; *Matter* v. *Bonaffe*,
23 id. 177; *People* v. *N. Y. C. R. R. Co.*, 24 id. 495;
*Robbins* v. *Fuller*, Id. 577; *People* v. *Dolan*, 36 id. 65;
*Fellows* v. *Heermans*, 13 Abb. [N. S.] 7.) This action is to
foreclose a mechanic's lien and is not an action "affecting the
title to real estate or an interest therein," and when a judgment
in such a case is for less than $500 there is no appeal to the
Court of Appeals. (*Wheeler* v. *Schofield*, 67 N. Y. 311.)

VANN, J. On the 14th of September, 1885, the city engineer
reported to the common council that the time to complete the
contract had expired long before, and "also that the contractor
has neglected to provide a sufficiency of workmen and material
and failed to supply the same with such due diligence that the
comparatively small amount of work remaining to be done
thirty days ago has not been promptly prosecuted to comple-
tion, nor will it be finished this fall at the present rate of pro-
gress." Two weeks later, after due notice to the contractor
of its intention to forfeit the contract if he did not prosecute

the work with diligence and promptness, the common council decided that the work required by the contract had not been completed, and that it was not being prosecuted with promptness and diligence, and declared the contract forfeited. The parties agreed that the common council should have this power if it was "satisfied" that the report of the engineer was correct. The common council could not be arbitrary or capricious in the exercise of the power, but was bound to act judicially and declare that it was satisfied only when in reason and good conscience it might be satisfied. While it was not bound to be right, it was bound to act in good faith. This, in the absence of evidence to the contrary, it is presumed to have done. The facts furnished sufficient ground for its action. Just two years had elapsed since the contractor began his undertaking under the agreement to complete it in one hundred days. According to the undisputed evidence all of the delays for which the city was responsible, or that were owing to the season of the year or the weather, did not exceed one year. The report itself gave the common council jurisdiction and was sufficient evidence for it to act upon. It stated as facts the expiration of the contract time and the negligence of the contractor to provide a sufficiency of workmen and materials. Even after notice the contractor had two weeks, but, according to the recitals in the resolution of forfeiture, he did not, during that period, proceed with promptness and diligence to prosecute the work. The trial court assumed that the forfeiture was authorized, but held, in effect, that all defects not mentioned in the report of the engineer were waived by the city.

Assuming that the common council had jurisdiction to declare the contract forfeited, the question arises, what effect that action had upon the rights of the parties. It is claimed by the respondents that the city had the power only to finish the work not then done, or attempted to be done, either imperfectly or otherwise, while the appellant contends that it had the right to finish all work then incomplete, including that which the contractor had attempted to do, but had done poorly.

The forfeiture contemplated by the contract applies only to the contractor by depriving him of the right to finish the work. It leaves the contract in force as to the city, but calls into operation new provisions especially adapted to the emergency. Those provisions do not simply authorize the common council to remedy the defects pointed out in the report, or to complete the work in those respects which the report mentioned as incomplete. They authorize the common council "to perform and furnish the work and material required by the plans and specifications, so as to fully execute and complete said work." Thus the power to complete the contract is unlimited. It is not confined to the ground upon which the contract may have been declared forfeited. The words "fully execute and complete" do not apply exclusively to that portion of the work which the contractor did not try to do at all, but they apply to all work not completed according to the plans and specifications. Instead of referring simply to that part of the street which had not been paved at all, they refer to the entire street and authorize everything to be done that was necessary to fully execute and complete the entire work as required by the contract. As the city had neither accepted any part of the work, nor waived any of the provisions of the contract, it was empowered to render perfect anything that the contractor had left imperfect, and to deduct the expense from the contract-price yet unpaid. It was not the intention of the parties, according to their written agreement, that upon declaring a forfeiture, the city should simply resume work where the contractor left off and finish it from that point only, with no right to remedy defects or to repair bad work in those parts of the street already gone over. Such a construction would deprive the words used by the parties of their natural meaning. If the contractor used poor materials and did poor work and finally refused to go on with the contract, the common council was not bound to declare the forfeiture upon all possible grounds. It was sufficient if it named a single tenable ground. That deprived the contractor of the right of further performance and con-

ferred it upon the common council. It thereupon became the duty of that body to cause to be done that which the contractor ought to have done, in order to fully execute and complete the work in the form required by the plans and specifications. Jurisdiction to forfeit the contract upon any ground conferred the power to complete the contract in every respect. The forfeiture does not operate simply to the extent named in the report, but absolutely, and the right to correct defects extends beyond those reported by the engineer, to the entire work. The contract does not require that notice should be given to the contractor to replace poor material or change poor work. It provides that all materials used and work done shall be subject to inspection by the common council and engineer, and that if, in the opinion of either, the material or work is bad, it shall be remedied by the contractor. It also provides that such inspection shall not be construed to relieve the contractor from any obligation to execute the work in strict accordance with the true intent and meaning of the plans and specifications. These provisions, however, ceased to be operative after the forfeiture. They applied only while the contractor was still engaged in performing the contract.

We think, therefore, that the trial court erred in rejecting certain evidence offered to show what portions of the work were defectively done, according to the plans and specifications, and what the work done by the city to remedy the defects was worth. The ruling was apparently based on the theory that the city, by its action, had waived all imperfect work and should be confined to that which had not even been commenced. From what has already been said, it is clear that this evidence should have been received, and that the reasonable value of the work necessarily done under the direction of the common council to fully complete the contract according to the plans and specifications, should have been deducted from the contract price.

It is insisted by certain of the respondents that as the amount of their respective liens is less than $500, no appeal can be

taken from the judgment as to them. The matter in contro-versy, however, is the amount due the contractor from the city, as that must be established before any lien upon it can be enforced. The lien operates upon the moneys in the control of the city, due or to grow due under the contract. By the judgment appealed from, it is first adjudged that the sum of $2,454.94 is due from the city to the contractor, under the contract, and then $1,803.01 thereof is distributed among seven persons holding liens, which range in amount from $40.37 to $1,190.40, while the remainder, $651.93, is awarded to the contractor.

We think that the judgment is appealable and that it should be reversed and a new trial granted, with costs to abide the event.

All concur.

Judgment reversed.