[No. 32096.   *En Banc.*   October 30, 1952.]

CARRIE McDOWELL, *Appellant,* v. FARWEST GARMENTS, INC., *Respondent.*[1]

*L. Presley Gill,* for appellant.

*W. F. Lubersky,* for respondent.

GRADY, J.—The question presented on this appeal is whether employees of respondent were entitled to holiday pay under the terms of the contract between their union and employer. The trial court decided adversely to their claims.

The respondent was engaged in the business of manufacturing work clothing. Its principal customer was the J. C. Penney Company. The employees were members of the

[1]Reported in 249 P. (2d) 372.

United Garment Workers of America, Local 17 of Seattle. The union had a written contract with respondent, the material parts of which, in so far as this controversy is concerned, are as follows:

". . . The following shall be recognized as legal holidays: New Year's Day, . . . Christmas Day. . . .

"All employees are to be paid for six holidays as follows: New Year's Day . . . and Christmas Day. . . . In order to be eligible for pay for a holiday an employee must work the last working day before and the first working day after a holiday, provided the manufacturer has work available for their particular job or operation. . . ."

The contract also contained vacation provisions, one of them being as follows:

"At the vacation period of each employer, every employee then in the employ of the employer shall receive one week's vacation with pay; provided, however, that employees with five or more years of continuous employment shall receive two weeks' vacation with pay."

In November, 1949, respondent was informed by Penney Company that no further purchases of its manufactured goods would be made. The loss of this customer affected respondent's business to the extent of about 70%. No orders for goods from other customers were on hand and the business future was uncertain. It became necessary that respondent reduce its payroll. At that time, respondent had 108 persons in its employ. Respondent conferred over the telephone with Carrie McDowell, the business representative and financial secretary of the union. The representative was informed that respondent intended to terminate the employment of all of its employees because it had no orders in view. A request was made that some of the employees be retained. In response to the request, eighteen of the employees were kept on the payroll. Others were given termination slips under dates from December 1st to December 9th. The slips read as follows:

"Your employment with Farwest Garments, Inc., will terminate as of December —————.

"Should conditions at a later date improve we will gladly consider you for reemployment. It is suggested you check

with your local Unemployment Compensation office as to your rights.                           Farwest Garments, Inc."

Some employees were given notices reading as follows:

"You are being laid off temporarily and we are advising the Unemployment Office accordingly. You will receive holiday pay for Christmas and New Years."

In January, 1950, an order was secured from Penney Company, and this, with other orders, enabled respondent during that month and February to re-employ nearly all of those in whose behalf this action was brought.

A number of the employees who received termination slips believed they became entitled to holiday pay for either Christmas or New Year's Day, or both, and assigned their claims to appellant, who instituted this action.

The appellant contends (1) that because the employees who received termination notices worked the last and first days for which there was available work they were protected in their holiday pay under the contract; (2) that respondent issued termination notices because of an expected shutdown of its manufacturing plant, but when it re-employed the employees and they worked the last day before and the first day after the period of termination respondent became liable for holiday pay; and (3) that inasmuch as respondent gave the complaining employees vacations a few months later pursuant to the vacation clause in the contract, there was a waiver of any claimed right to deny holiday pay.

We are unable to adopt the theory advanced by appellant, because in order to do so it would be necessary to place an incorrect construction upon the contract. The document was carefully prepared so as to attain definite objectives. It is plain and free from ambiguity. When it became necessary for the respondent to reduce its working force, it exercised its right to terminate the employment of those employees represented by appellant. They were not employees of respondent on the days preceding and following the holidays. The holiday pay benefits given by the union contract with these employees were automatically ended

when employment terminated. They would not again come into being until there was a re-employment, and then only prospectively. There is nothing in the record to indicate bad faith on the part of respondent or that it voluntarily created a situation that made the employees ineligible for holiday pay. The loss of business and the uncertainty of relief therefrom afforded legal justification for the discharge of employees.

We find no place for the application of the doctrine of waiver. The appellant makes the assertion in her brief that "respondent's payment of vacations constitutes a waiver with respect to its alleged right to deny holiday pay" and cites authority to the effect that a waiver is the voluntary relinquishment or abandonment of a known right. The act of respondent in giving those they re-employed the vacation pay provided for in the contract had no relation to the right to deny holiday pay to those whose employment had been terminated. We fail to see what known right was voluntarily relinquished or abandoned. Respondent asserted and executed both its right to discharge employees and to give vacation pay to those re-employed when vacation time arrived.

At conference the suggestion was made that this court was without jurisdiction to entertain the appeal for the reason that the amount in controversy did not exceed the sum of two hundred dollars. A majority of the members of the court were of the opinion that the same question was presented and decided in *National Ass'n of Creditors v. Grassley*, 159 Wash. 185, 292 Pac. 416. They were also of the opinion that case was correctly decided and should not be overruled.

The judgment is affirmed.

SCHWELLENBACH, C. J., HILL, HAMLEY, FINLEY, and OLSON, JJ., concur.

DONWORTH, J. (dissenting)—While I would have no difficulty in arriving at the same conclusion as the majority if I were of the opinion that this court had jurisdiction of this

appeal, I must dissent because I am firmly convinced that we have none.

Article IV, § 4, of our constitution provides, so far as applicable to this case, that our appellate jurisdiction shall not extend to civil actions at law for the recovery of money where the original amount in controversy does not exceed the sum of two hundred dollars.

The complaint alleges that forty-four persons, having wage claims against respondent in varying amounts ranging from $7.20 to $26.40 (total $756.06), have assigned their claims to appellant by an instrument reading as follows:

"The undersigned hereby transfer and assign to CARRIE McDOWELL, for value received, all of their claim, right and title, chose of action of whatsoever kind or nature arising out of the employment by FARWEST GARMENTS INC. for Christmas, 1949 and New Years, 1950, hereby authorizing CARRIE McDOWELL to make claim therefor, to sue in our names or in her name; to compromise, settle and receive payment therefor in our names or otherwise and to give receipts therefor with the same effect as if the said receipts were executed in our names, hereby confirming all that the said CARRIE McDOWELL may do in the premises."

In *Smaby v. Shrauger,* 9 Wn. (2d) 691, 115 P. (2d) 967, five plaintiffs, having separate causes of action against the same defendants, joined them in one complaint. On motion of respondents (defendants in the trial court), we held that we had no jurisdiction as to three claims because the amount in controversy in each instance did not exceed two hundred dollars. In dismissing their appeals, we said:

"Article IV, § 4, of the Washington constitution provides that the appellate jurisdiction of the supreme court shall not extend to civil actions at law for the recovery of money or personal property when the original amount in controversy or the value of the property does not exceed the sum of two hundred dollars.

"It has long since been established in this state that where several plaintiffs or cross-complainants, having separate and distinct claims for money, are joined in one complaint or cross-complaint, the several amounts of their respective claims cannot be added together so as to confer a right of appeal either in favor of or against those plaintiffs or cross-

complainants whose individual claims are under the jurisdictional amount. *Garneau v. Port Blakely Mill Co.*, 20 Wash. 97, 54 Pac. 771; *National Surety Co. v. Bratnober Lumber Co.*, 67 Wash. 601, 122 Pac. 337; *Cascade Const. Co. v. Snohomish County*, 105 Wash. 484, 178 Pac. 470; *State ex rel. Home Tel. & Tel. Co. v. Hurn*, 106 Wash. 362, 180 Pac. 400.

"No question of assignment of the claims to one person, thereby creating an aggregate amount in excess of two hundred dollars, is here involved, as was the case in *National Ass'n of Creditors v. Grassley*, 159 Wash. 185, 292 Pac. 416."

Recently, in *Dygert v. Hansen*, 31 Wn. (2d) 858, 199 P. (2d) 596, we dismissed three appeals on our own motion because the amount in controversy did not exceed two hundred dollars.

I recognize that our decision in *National Ass'n of Creditors v. Grassley*, 159 Wash. 185, 292 Pac. 416, is directly in point and holds that, under circumstances similar to those present in the instant case, a motion to dismiss the appeal will be denied. The reasoning upon which this holding was based is stated in the following language:

"Respondents here move to dismiss the appeal, on the ground that the amount in controversy is less than two hundred dollars, it being argued that appellant admittedly took the assignments of the several causes of action for the purpose of collecting the claims. Respondents cite, in support of their motion, *Garneau v. Port Blakely Mill Co.*, 20 Wash. 97, 54 Pac. 771, and *Denison v. Denison*, 16 Conn. 34. The first case cited does not meet the present issue, and if the other case does, we cannot follow it.

"Our statute, Rem. Comp. Stat., § 179, requiring every action to be prosecuted in the name of the real party in interest, has so often been construed so as to permit the person to whom the cause of action has been assigned for the purpose of collection, to maintain an action thereon, that authorities need not be cited. If, by such an assignment, the assignee obtains sufficient legal title to become the real party in interest for the purpose of prosecuting the action, he also has sufficient title to prosecute the appeal. *To hold otherwise would be illogical*, and we need pursue the subject no further; but see *Shannon v. Abrams*, 98 Kan. 26, 157 Pac. 449, Ann. Cas. 1918E, 502, and note following. The motion to dismiss is denied." (Italics mine.)

In my opinion, this decision is illogical and should be overruled. Because RCW 4.08.080 (Rem. Rev. Stat., § 191) permits an assignee for collection to prosecute an action in his own name in the superior court on assigned claims, it does not follow that he may prosecute an appeal. A procedural statute cannot have the effect of amending the constitution. The term "original amount in controversy" as used means the amount which the assignor claimed against the defendant at the time the controversy arose. The assignee by piling claim upon claim until the total exceeds two hundred dollars cannot give this court appellate jurisdiction.

The fallacy of permitting this to be done is well illustrated in this case. The above quoted assignment permits appellant to sue either in her name or the claimants' several names. If she sues in their names, we must dismiss the appeal under *Smaby v. Shrauger, supra.* But if she sues in her name she is permitted, under *National Ass'n of Creditors v. Grassley, supra,* to add the trivial amounts of the claims ($7.20 to $26.40) together and thus circumvent the constitution and confer appellate jurisdiction on this court.

The *Grassley* case was wrongly decided and should be overruled.

Since this court plainly has no jurisdiction of this appeal, it should be dismissed on our own motion.

MALLERY and WEAVER, JJ., concur with DONWORTH, J.